ARTHUR GEORGE BROWN, Adm'r d. b. n. c. t. a. of MARY E. McFARLAND, and others *vs.* JAMES H. THOMPKINS, *et al.*

*Construction of a bequest to "the Diocesan Missionary Societies of Maryland and Virginia."*

The will of a testatrix contained the following clause: "I give and bequeath all the rest and residue of my property to be equally divided between the Diocesan Missionary Societies of Maryland and Virginia."

The Act of 1840, ch. 67, constituted the Convention of the Protestant Church of the Diocese of Maryland, a body corporate for the purpose of enabling it to take and hold "subscriptions or contributions in money or otherwise," for a fund raised for the support of the Episcopate of said Church in the Diocese of Maryland. The Act of 1856, ch. 17, enlarges its corporate powers so as to enable it to take and hold *subscriptions or contributions* in money or otherwise for the various religious associations organized and existing under the sanction of said Convention. HELD:

1st. That the power conferred by said Acts does not extend to gifts by devise, and said bequest in so far as it related to the Diocesan Missionary Society of Maryland was void, there being no body corporate in Maryland, other than the one created by said Acts, answering to the description in the will.

2nd. That the bequest to the Diocesan Missionary Society of Virginia was valid, it appearing.that at the time of the death of the testatrix there was a society incorporated by the laws of Virginia, by the name of the "*Trustees of the Diocesan Missionary Society of Virginia,*" and there being no other society known by that name, nor any other society claiming under said will.

3rd. That the mere fact that the bequest was to the "Diocesan Missionary Society," and not to the Trustees, in no manner affected the validity of the bequest.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed by the heirs and next of kin of Mary E. McFarland, against her executor, claim-

ing that the residuary clause of the will of the testatrix, which is set forth in the opinion of the Court, was void, and asking that the executor be required to distribute the residuary estate among the complainants.

The convention of the Protestant Episcopal Church of the diocese of Maryland, and the trustees of the Diocesan Missionary Society of Virginia, also subsequently became defendants.

The Court below, (GILMOR, J.,) passed a decree making the administrator *de bonis non c. t. a.* of the testatrix, a party defendant in the place of the executor who had died, and declaring the next of kin of the testatrix entitled to the property. The defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, ALVEY and ROBINSON, J.

*Bernard Carter* and *F. W. Brune,* for the appellants.

The testatrix, by the terms "Diocesan Missionary *Socie-ties* of *Maryland* and *Virginia*," referred to the bodies organized in the Protestant Episcopal Church in those States, and there incorporated, for the establishment and maintenance of Diocesan Missions.

A mistake in the name of the corporation does not avoid a gift or devise to it, if the party intended can be identified.

It is sufficient, in order to establish such identification, to show that there is no other corporation in existence which could have been intended by the testator. 2 *Kent,* 292 ; *Angell and Ames, secs.* 99, 185 ; *Sutton vs. Cole,* 3 *Pick.,* 232, 236–7 ; *Vansant vs. Roberts,* 3 *Md.,* 119, 127 ; 1 *Redfield,* 691,695 ; *Trustees, &c. vs. Colegrove,* 4 *Hun.,* 362 ; *McAllister vs. Same,* 46 *Vermt.,* 272, 282 ; *Smith vs. First Church,* 26 *N. J. Eq.,* 132 ; *Church, &c. vs. Hatch,* 48 *N. H.,* 393 ; *Roy's Ex'r vs. Rouzie,* 25 *Gratt.,* 605 ; *Inglis vs. Trustees,* 3 *Pet. S. C.,* 99.

The Act of 1856 was intended to give to "The Convention" corporate power to hold and administer all gifts and contributions given to any of the committees organized under the canon of 1853, as well as all other associations for religious and charitable purposes, under the control or sanction of the convention, just as if each one of these committees or associations had been separately incorporated.

The terms, "subscriptions or contributions," in the Act of 1856, must be construed to embrace gifts by will or otherwise, to the convention or any of its associations.

This construction is aided upon a reference to the terms of the canon of 1853, whose beneficent designs the Act of 1856 was evidently intended to promote.

A corporation is entitled to take and hold property given in trust for any object within the scope of its incorporation. *Angell and Ames, sec.* 168 ; *Mayor vs. Elliott,* 3 *Rawle,* 170 ; *Vidal vs. Girard,* 2 *How.,* 189–190 ; *In re, same,* 1 *Paige,* 214 ; *Sutton vs. Cole,* 3 *Pick.,* 232 ; *Kennard vs. Miller,* 25 *Gratt.,* 107–122.

*H. Tillard Smith* and *Daniel Ratcliffe,* for the appellees.

The bequest in the last will and testament of Mary E. McFarland, deceased, of the residuum of her estate to be equally divided between the Diocesan Missionary Societies of Maryland and Virginia, is vague and uncertain in the description and designation of the objects of the testatrix's bounty, is consequently void, and its subject-matter vests in the next of kin.

Neither one of the appellants—The trustees of the Diocesan Missionary Society of Virginia or the Convention of the Protestant Episcopal Church, in the diocese of Maryland, are so sufficiently described as to warrant the Court in saying that either of them was intended as a legatee under the will, nor is that insufficiency, in respect to the Virginia society, removed by the testimony taken in its

behalf under the commission issued to Richmond, Virginia. This testimony develops the fact that at the time of making of the will, on the 31st of March, 1874, there existed in Richmond, Virginia, a society *unincorporated,* and incapable of taking, known as the Diocesan Missionary Society of Virginia. The *Trustees* of the Diocesan Missionary Society of Virginia was not then *in esse,* and did not come into being until February, 5th, 1875, a period of nearly one year thereafter. Giving then the testimony full force and effect, the conclusion is irresistible that the testatrix intended the unincorporated society then existing, and not the Trustees of the Diocesan Missionary Society of Virginia, existing not until long thereafter, as the legatee of one moiety of the residuum of her estate, if she intended either of them. For stronger and more manifest reasons she could not have contemplated the Convention of the Protestant Episcopal Church, in the diocese of Maryland, as one of the objects of her beneficence. 1 *Jarman on Wills,* 316 ; *Wigram on Wills,* 135, 137 ; 1 *Roper on Legacies,* 188, 189 ; *Powell on Devises,* 348 ; *State, use of Trustees of M. E. Ch., &c. vs. Warren,* 28 *Md.,* 338; *Smith vs. Bell,* 6 *Pet.,* 68 ; *Hawman and Wife vs. Thomas, Ex'r,* 44 *Md.,* 30 ; *Trippe vs. Frazier,* 4 *H. & J.,* 446 ; *Dashiell vs. Attorney-General,* 5 *H & J.,* 392 ; *Dashiell vs. Attorney-General,* 6 *H. & J.,* 1 ; *Widerman vs. Mayor & C. C. of Baltimore,* 8 *Md.,* 551 ; *Dom. & For. Miss. So. vs. Reynolds' Ex'rs,* 9 *Md.,* 341 ; *Needles vs. Martin,* 33 *Md.,* 609 ; *Provost and Town Council of Dumfries vs. Abercrombie,* 46 *Md.,* 172 ; *Veazey's Ab.,* October, 1876, 126.

The construction claimed by the appellants is in derogation of the rights of the heirs and will work to their disherison. *Saylor vs. Plaine, et al.,* 31 *Md.,* 158 ; *Rea vs. Twilley,* 35 *Md.,* 409 ; *Creswell vs. Lawson,* 9 *G. & J.,* 227 ; *Ridgeley vs. Bond,* 18 *Md.,* 433 ; *Hawman and Wife vs. Thomas,* 44 *Md.,* 30.

Nowhere in the last will and testament of Mary E. McFarland, deceased, in the disputed clause or elsewhere, is it indicated that any corporation was intended as the object of the testatrix's bounty.   It is then the merest conjecture and speculation to say that she did intend a corporation, or that either of the appellants was the corporation intended.   The Court of Appeals in the case of the *Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States of America vs. Maria E. Reynolds' Ex'rs,* 9 *Md.*, 341, in its opinion on page 347, uses the following language, "in this case the language employed by the testatrix does not indicate with any degree of certainty that any corporation was designed to be the channel through which her beneficence was to pass, how then can we say that a particular corporation, to wit, the appellants, were intended as the objects of the testatrix's bounty?"

The Court also in the case just referred to, reviewed the case of *Vansant vs. Roberts,* 3 *Md.,* 119, cited on the brief of the appellant, and compared it with the case in 9 *Md. Vansant vs. Roberts* was cited for the same purposes in that case as in this, but the Court said the difference between them was, that in *Vansant vs. Roberts* the testator provided in express terms that the bequest should go to a corporation, but in the case of the *Domestic and Foreign Missionary Society, &c. vs. Reynolds' Executors,* it was not so provided.   In that respect this last mentioned case was precisely similar to the present one, and *Vansant vs. Roberts* is utterly inapplicable.   The same may be said of the case in 4 *Wheaton,* i, *The Trustees of the Philadelphia Baptist Association vs. Hart's Executors.*   There the Baptist's Association, claiming under the will was unincorporated, and upon that point was the decision of the Court based.   The other authorities cited on the brief of the Virginia Society are obnoxious to the same objections. 1 *Jarman on Wills,* 318, 343 ; *Dom. and For. Miss. Society vs. Reynolds' Ex'rs,* 9 *Md.,* 341.

The Acts of 1840, ch. 67, and 1856, ch. 17, under. which the Protestant Episcopal Convention, in the diocese of Maryland, claims its incorporation, prescribes that the same shall not take effect until the convention shall file a certificate of its acceptance of the same with the Secretary of State. The record does not show that this has been done, and if done, it is incumbent on the convention to show it affirmatively. A corporation created by statute must show a strict compliance with the terms of the Act. *Angell & Ames on Corp.*, (10th *Ed.*,) sec. 83, *p.* 60 ; *Planters' Bank vs. Bank of Alexandria,* 10 *G. & J.,* 346.

The construction claimed by the convention of the Protestant Episcopal Church, in the Diocese of Maryland, of the Acts of 1840, ch. 67, and 1856, ch. 17, is contrary to every true principle of statutory construction. It is manifest by the terms of those Acts that the Legislature never intended that the Protestant Episcopal Convention of Maryland should take by devise or bequest, and is equally evident that the convention never asked or expected it. If there is any doubt as to the meaning of the Acts, any part (even the preamble) may be resorted to, in order to ascertain what was intended. The rule is, that where particular words are followed by general ones, the meaning of the latter cannot be extended, but they must be held strictly to apply to persons and things *ejusdem generis.* If subscriptions or contributions have legal significations they must prevail, if not, they must be taken in their ordinary and accepted sense. Neither can be made to embrace a devise or bequest in any sense *Dwarris on Statutes,* (2nd *Ed.*,) 621 ; *Chitty on Contracts,* 83 ; *Sandiman vs. Beach* 7 *B. & C.,* 96; *Kitchen vs. Shaw,* 6 *A. & E.,* 729 ; *Kitchen vs. Shaw,* 1 *N. & P.,* 791 ; *Mayor, &c. vs. Howard,* 6 *H. & J.,* 383 ; *Canal Co. vs. Railroad Co.,* 4 *G. & J.,* 1 ; *Medley vs. Williams' Lessee,* 7 *G. & J.,* 61 ; *Kent vs. Somervell,* 7 *G. & J.,* 265 ; *Allen vs. Mutual Fire Ins. Co.,* 2 *Md.,* 211 ; *Alexander vs. Worthington,* 5 *Md.,* 471.

The committee of missions for which the convention claims to take in trust, has no corporate being whatever, and even if fully described by the testatrix in every particular as the object of her beneficence is not now and never was capable of taking directly or indirectly. Its existence is ephemeral, it is made and unmade at the whim or caprice of its parent, the convention, and its longest period of life is from one annual meeting to another of that body. It performs no duties independently, but acts entirely under the direction and guidance of the appellant. Its field of operations is not co-extensive with the territorial limits of the Diocese of Maryland, the scope of its duties being confined to a few counties of the State; in short, it is but the ordinary committee of legislative bodies, charged with specific duties and details, which the larger body, by reason of its ponderousness, is incapable of performing. Even if the convention was capable of taking for itself, it could not take in trust or otherwise for a society not incorporated. A devise or bequest to a corporate body for the use of a society not incorporated, is void. *Jackson vs. Holland,* 2 *Caines' Cases in Error,* 337.

ROBINSON, J., delivered the opinion of the Court.

The question in this case arises upon the construction of the following residuary clause in the will of Mary E. McFarland, deceased:

" I give and bequeath all the rest and residue of my property to be equally divided between the Diocesan Missionary Societies of Maryland and Virginia."

It is admitted there was no such corporation as the Diocesan Missionary Society of Maryland in existence, either at the time of the execution of the will, or at the time of the death the testatrix, but there was and is now a *" committee of missions,"* appointed by the convention of the Protestant Episcopal Church in the Diocese of Maryland, having charge of missionary work in several of the

counties of the State, and commonly known as the " *Missionary Society* " and " *The Diocesan Missionary Society.*"

The appellants contend, that by the bequest to " the Diocesan Missionary Society of the State of Maryland," the testatrix meant " *the Committee of Missions* " thus appointed, and which was known as the Diocesan Missionary Society ; and that the said convention is authorized by the Acts of 1840, ch. 67, and 1856, ch. 17, to take said bequest for and in behalf of said committee.

The convention was incorporated by the Act of 1840, for the purpose of enabling it to take, hold, invest, and receive the proceeds of a fund raised for the support of the Episcopate of said church in the Diocese of this State. The preamble declares this to be *the object and sole object of the Act.* And for this purpose it provides, that the said convention shall have full power to take and hold "*subscriptions or contributions in money or otherwise.*

The Act of 1856 merely enlarges its corporate powers, so as to enable it to take and hold subscriptions or contributions in money or otherwise, for the various religious associations organized and existing under the sanction of said convention.

Conceding now for the purposes of this case the testatrix meant the committee of missions as one of the residuary legatees, and further that said committee is " *a religious association,*" within the terms of the Act of 1856, the question is, whether the power conferred on the convention to take and hold subscriptions or contributions in money or otherwise, enables it to take under a will?

If the determination of this question rested solely upon the language of these Acts it would be questionable, to say the least, whether the Legislature meant to confer the power to take by devise ; but when construed in connection with the provisions of the Constitution of this State, we are decidedly of opinion that the construction insisted on by the appellants cannot be sustained.

Article 38 of the Bill of Rights declares that every " *gift*," " *sale*," or " *devise* " of real or personal property for *religious purposes*, to take effect after the death of the " *seller* " or "*donor*," without the prior or subsequent sanction of the Legislature, shall be void. The distinction between a " gift," and " a sale," and " a devise," is thus expressly recognized by the Constitution. And when the Legislature gives its sanction, and authorizes a religious body to take and hold subscriptions or contributions in money or otherwise, for religious purposes, the power thus conferred to take by gift does not embrace power to take by will. To thus hold would be to ignore the distinction recognized by the fundamental law of the State. With every disposition therefore to give effect to the apparent intention of the testatrix, for a purpose so worthy of her bounty, we feel constrained to say, the Acts relied upon by the appellants confer no power on the convention to take property under a will.

We have no such difficulty, however, in regard to the bequest to the Diocesan Missionary Society of Virginia. It appears that at the time of the death of the testatrix there was a society incorporated by the laws of Virginia, by the name of " *The Trustees of the Diocesan Missionary Society of Virginia*." There is no other society known by that name, nor is there any other society claiming under this will. The mere fact that the bequest is to the " Diocesan Missionary Society," and not to the " Trustees," in no manner affects the validity of the bequest. That the testatrix meant the society incorporated as the " Trustees of the Diocesan Missionary Society of Virginia," is in our opinion too plain for argument.

In *Vansant vs. Roberts*, 3 *Md.*, 119, it was held that the provisions of the Bill of Rights in regard to devises of personal property for religious purposes had no application to corporations created by the laws of other States, and it follows, therefore, that " the Trustees of the Dioce-

san Missionary Society of Virginia," are entitled to take as one of the residuary legatees under this will.

The decree below must be affirmed in part, and reversed in part, and the cause remanded in order that a decree may be passed in conformity with the decision of this Court.

> *Decree affirmed in part, and*
> *reversed in part, and*
> *cause remanded.*